# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____ -Civ-( _____ )

**11-80155**

**CIV-COHN**

MAGISTRATE JUDGE
SELTZER

FILED by _____ D.C.

FEB 07 2011

STEVEN M. LARIMORE
CLERK U S DIST CT
S D of FLA – MIAMI

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. MORTGAGE FUNDING, INC., | ) |
| a Florida corporation, | ) |
| | ) |
| DEBT REMEDY PARTNERS, INC., | ) |
| a Florida corporation, | ) |
| | ) |
| LOWER MY DEBTS.COM, LLC, | ) |
| a Florida limited liability company, | ) |
| | ) |
| DAVID MAHLER, individually and as an officer | ) |
| of Debt Remedy Partners, Inc. and | ) |
| a former officer of U.S. Mortgage Funding, Inc. | ) |
| | ) |
| JOHN INCANDELA, JR., a.k.a. Jonathan | ) |
| Incandela, Jr., individually and as a former director | ) |
| of U.S. Mortgage Funding, Inc. and a manager of | ) |
| Lower My Debts.Com, LLC, and | ) |
| | ) |
| JAMEN LACHS, individually and as an officer of | ) |
| U.S. Mortgage Funding, Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Sealed

## COMPLAINT FOR PERMANENT INJUNCTIVE
## AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.  The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.*, to

obtain temporary, preliminary and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with marketing and selling mortgage loan modification and foreclosure relief services to consumers throughout the United States.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57(b), 6102(c), and 6105(b).

## DEFENDANTS

6.      Defendant U.S. Mortgage Funding, Inc. ("USMF") is a Florida corporation with its principal place of business in the Southern District of Florida.  USMF transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, USMF has advertised, marketed, or sold loan modification and foreclosure relief services to consumers throughout the United States.

7.      Defendant Debt Remedy Partners, Inc. ("Debt Remedy") is a Florida corporation with its principal place of business in the Southern District of Florida.  Debt Remedy transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Debt Remedy has advertised, marketed, or sold loan modification and foreclosure relief services to consumers throughout the United States.

8.      Defendant Lower My Debts.Com, LLC  ("LMD") is a Florida limited liability company with its principal place of business in the Southern District of Florida.  LMD transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, LMD has advertised, marketed, or sold loan modification and foreclosure relief services to consumers throughout the United States.

9.      Defendant David Mahler is an officer of Debt Remedy and was a manager of USMF.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Mahler resides in this district and in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10.     Defendant John Incandela, Jr., also known as Jonathan Incandela, Jr., is a

manager of LMD and was an officer of USMF.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Incandela resides in this district and in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

11.    Defendant Jamen Lachs is a director of USMF.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Lachs resides in this district and in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

12.    Defendants USMF, Debt Remedy, and LMD (collectively "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices alleged below.  Corporate Defendants have conducted the business practices described below through interrelated companies that have or had a common office location and common officers, directors, managers or employees.  Corporate Defendants also commingle or have commingled funds, and have participated in a common scheme to deceive consumers.  Because these Corporate Defendants have operated or are operating as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Individual Defendants Lachs, Mahler, and Incandela, acting individually or jointly, have formulated, directed, controlled, have the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

13.    At all times material to this Complaint, Defendants have maintained a substantial

course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

<b><u>DEFENDANTS' BUSINESS ACTIVITIES</u></b>

14.     Since at least 2009, Defendants, acting alone or in concert with others, have engaged in a course of conduct to advertise, market, offer to sell, and sell to consumers purported loan modification and foreclosure relief services.

15.     Defendants market their services using direct mail solicitations that solicit inbound telephone calls from consumers. Defendants also market their services via outbound telephone calls and an Internet website to consumers throughout the United States who are in danger of losing their homes to foreclosure and facing other financial difficulties.

16.     To induce consumers to purchase their services, Defendants have disseminated or caused to be disseminated advertisements for mortgage assistance relief services. These advertisements are disseminated via direct mail solicitations, the Internet, and telemarketing sales pitches.

<b><u>Defendants' Direct Mail Solicitation</u></b>

17.     Defendants send direct mail solicitations to financially distressed consumers throughout the United States to convince consumers to initiate inbound telephone calls to Defendants to inquire about Defendants' purported loan modification services.

18.     Defendants' direct mail solicitations inform consumers that they qualify for loan modifications. Defendants' direct mail solicitations are addressed to specific consumers, are labeled "**Eligibility Notice,**" and include the name of the consumer's lender. The solicitations tell consumers that previous attempts have been made to notify them and urge consumers to call the listed toll-free number before their eligibility for the loan modification program expires.

Page 5 of 19

19.    For example, one direct mail solicitation Defendants sent to a consumer states:

**Eligibility Notice**
**RE: SECURITY ATLANTIC MTG**
**File Number: 15007684**
**STATUS:** Our records indicate that you have not responded
to our previous attempts to notify you of your eligibility to modify
the terms of your existing mortgage . . . . Please contact us toll
free at 888-292-5350 before the final date of 12/20/09 for details
of your eligibility.

You have been selected to qualify for a loan modification program.
Your outstanding debt may be reduced and the term of repayment
may be modified. Your total principal, interest and monthly
payments could be reduced. Any late fees and penalties may be
forgiven. . . For details of benefits and your eligibility, call the
number below and provide your file number.

20.    In numerous instances, consumers who receive Defendants' direct mail

solicitations report that because Defendants' letters are addressed specifically to them, state their

lenders' names, provide a reference number, state that they are eligible for a modification, and

urge them to call before their eligibility lapses, they are led to believe that Defendants are

affiliated with, referred or approved by their lenders.

21.    Defendants' solicitation letters do not inform consumers of the total fees or total

costs to purchase, receive, or use Defendants' mortgage loan modification services.

### Defendants' Outbound Telemarketing

22.    In numerous instances, Defendants initiate contact with consumers by placing

telemarketing calls. During these calls, Defendants state that they can help consumers by

modifying their loans and/or saving their homes from foreclosures, in exchange for a fee.

23.    While telemarketing their services, Defendants, acting directly or through one or

more of their intermediaries, have made calls to consumers whose telephone numbers are on the

National Do Not Call Registry ("Do Not Call Registry" or "Registry"), maintained by the FTC, in violation of the TSR.

24.     Since at least 2009, Defendants, acting directly or through one or more intermediaries, have called telephone numbers in various area codes without first paying the annual fee for access to the telephone numbers within area codes that are included in the Registry.

**Defendants' Telemarketing Sales Pitch**

25.     Consumers who respond to Defendants' marketing efforts have home mortgage loans, and are typically having difficulty making their monthly payments.

26.     Whether Defendants initiate the telemarketing calls or consumers call in response to Defendants' solicitations, Defendants' telemarketers tell consumers that USMF will obtain loan modifications that will make consumers' mortgages substantially more affordable. Defendants promise to reduce consumers' monthly payments or interest rates or convert adjustable rates to fixed.

27.     Defendants make such representations to consumers who call, even to those consumers who inform Defendants that their lenders have previously denied them modifications or that their lenders have sent them foreclosure notices.

28.     In numerous cases, Defendants' telemarketers claim that consumers are virtually guaranteed to get a modification of their existing mortgage.

29.     Defendants' telemarketers typically promise consumers that Defendants will help modify consumers' mortgages to make their payments more affordable. In numerous cases, Defendant' telemarketers claim they can prevent foreclosure or that the modification process will stay lenders' ability to foreclose. In numerous instances, Defendants' telemarketers

represent that Defendants will obtain specific reductions in consumers' mortgage interest rates and payment amounts.

30.    In numerous instances, Defendants' telemarketers also tell consumers that USMF has special expertise in negotiating modifications with mortgage lenders and saving homes from foreclosure.  Defendants' representatives tell consumers that USMF has worked with their lenders for years or has proven prior success in obtaining modifications from their lenders, purportedly giving USMF the ability to obtain favorable loan modifications or loan forbearances on behalf of its customers.

31.    In numerous instances, Defendants' representatives tell consumers that USMF has attorneys and staff who specialize in obtaining loan modifications who will work on their cases and that this specialized knowledge and expertise will ensure Defendants' success in obtaining loan modifications for the consumers.

32.    Defendants' representatives routinely tell consumers that USMF has an exceptionally high success rate in negotiating loan modifications.  Defendants' representatives frequently claim that 95% to 100% of Defendants' clients receive loan modifications.

33.    During initial conversations with consumers, Defendants' telemarketers usually identify themselves as working for USMF.  However, in numerous instances, Defendants' telemarketers lead consumers to believe that USMF is affiliated with, referred or approved by consumers' lenders.

34.    Defendants' telemarketers collect information from consumers, including details about the consumers' mortgages and income.  After consumers provide this information, Defendants' telemarketers tell consumers that they qualify for a loan modification.

35.    Defendants' representatives often encourage consumers to stop paying their

mortgages, and tell consumers that delinquency will demonstrate the consumers' hardship to the consumers' lenders.

36.     Defendants' telemarketers tell consumers not to contact their lenders, even consumers who receive foreclosure notices, and claim that they will handle all communications with consumers' lenders.

37.     The fee Defendants charge generally ranges from $1500 to $2600.  During the initial sales call, Defendants' telemarketers typically instruct consumers that they must pay a large portion of Defendants' fee, usually half, up-front.

38.     Defendants' telemarketers tell consumers that if Defendants are unable to obtain a loan modification for the consumers, Defendants will refund 100% of the fee paid.

39.     Typically, after requesting payment, Defendants send consumers a package of documents that includes a contract, check authorization form, and a list of financial documents that consumers must provide to Defendants to complete their modification application. Defendants' contract reiterates the verbal representations Defendants' telemarketers make regarding Defendants' "expertise" and 100% refund policy, and explicitly prohibits consumers from communicating with their lenders after they sign up with Defendants.  For example, Defendants' contract states the following:

> a.     "We can, however, guarantee that based on our knowledge and expertise in the modification arena, as a result of our facilitation of your modification you will be placed in a better financial position, regarding your mortgage, than you were prior to having engaged our services."

> b.     "In the event USMF is not able receive [*sic*] an offer from your lender to modify your mortgage, USMF will return 100% of ALL monies received

Page 9 of  19

from client."

    c.    "[T]he Client understands that upon acceptance of funds, the Client is to cease all communications with their lending institution(s) unless otherwise authorized by USMF. Any breach of this condition can jeopardize USMF's negotiating proceedings and voids the aforementioned refund policy."

40.    In numerous instances, when consumers contact their lenders they learn that USMF is not affiliated with, referred or approved by their lenders. In many cases, consumers' lenders have stated that they are not affiliated with Defendants, nor have lenders referred or approved Defendants.

### Defendants' Website

41.    Defendants maintain a website, www.usmortgagefunding.org. On their website, Defendants reiterate the representations Defendants' telemarketers make during the sales pitch to induce consumers to purchase Defendants' services, including the following representations:

    a.    "We have a guarantee that is second to none. Call us TODAY at 866-977-6950 and let USMortgageFunding.org save your home."

    b.    **"It's your home. We make sure it stays that way."**

42.    Defendants also represent that Defendants are experts and have specialized knowledge and proven expertise that will ensure their success in obtaining loan modifications for consumers, including the following explicit representations:

    a.    **"Expert Representation** . . . This distinction is critical in that it can make all the difference between success and failure."

    b.    **"Why should an attorney be involved with my loan modification?**

Page 10 of 19

Knowledge of the law along with proven expertise is what is needed for successful loan modification. This can only be achieved with an expert, highly experienced loan modification attorney . . . The risk of losing your home is too great to put in the wrong hands."

c.     "You want the strength of our attorneys and processors behind you while your modification becomes a reality. USMF wants to make sure that homeowners stay in their homes."

43.     Defendants' website also contains representations that hiring USMF is risk-free because their loan modification and foreclosure relief services are backed by a guarantee to fully refund all fees paid by consumers, including the following:

a.     "[W]e provide a 100% modification guarantee in writing. If we accept your file and cannot obtain a modification offer from your lender, you will receive your money back . . . Yes, you get back every dollar and we keep ZERO."

b.     "USMortgageFunding.org gives every client a written 100% refund guarantee. If we do not receive an offer from your lender to modify your current loan, we will give you a refund."

c.     "**How do your fees work?** The Principals of our company believe that if you do not get a loan modification offer - no fee should be charged. It's just that simple."

44.     Defendants, in the "Frequently Asked Questions and Answers" section on their website, also encourage consumers to stop paying on their mortgages:

**Are you saying that I should not make my mortgage**

Page 11 of 19

**payments?** . . . [T]he farther you are behind in your payments, the

stronger your case for modification with your lending institution.

Typically banks give priority to cases that are closest to

foreclosure.

### Defendants Do Not Obtain the Promised Modifications

45.     In numerous instances, Defendants fail to answer or return consumers' telephone calls or to provide updates about the status of Defendants' purported communications with consumers' lenders. When consumers are able to reach Defendants, Defendants' telemarketers generally assure consumers that their lenders will not foreclose on their homes because the consumer is in the process of applying for a loan modification.

46.     Defendants regularly fail to obtain the promised mortgage loan modifications. Consumers learn from their lenders that Defendants have not submitted their applications to their lenders, or that Defendants provided incomplete documentation to the lender even though the consumer provided all required documentation to Defendants.

47.     Consumers who do not obtain loan modifications usually encounter difficulty in obtaining refunds or are refused the promised refunds. In many instances, consumers only receive refunds after making repeated requests to Defendants or complaining to or threatening to complain to entities such as the Better Business Bureau or law enforcement authorities. In many instances, Defendants do not provide any refunds or refund an amount substantially less than consumers paid.

48.     While some consumers who paid Defendants are able to obtain mortgage modifications and avoid foreclosure, it is only through their own efforts and not because of any service provided or promised by Defendants.

## VIOLATIONS OF THE FTC ACT

49.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

50.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I

51.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of mortgage loan modification or foreclosure rescue services, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants generally will obtain for consumers mortgage loan modifications that will make their mortgage payments substantially more affordable.

52.     In truth and in fact, the material representation set forth in Paragraph 51 is false or was not substantiated at the time the representation was made.

53.     Therefore, Defendants' representation as set forth in Paragraph 51 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S. C. § 45(a).

### Count II

54.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of mortgage loan modification or foreclosure rescue services, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants are affiliated with, referred, or approved by consumers' lenders.

55.     In truth and in fact, Defendants are not affiliated with, referred, or approved by consumers' lenders.

56.     Therefore, Defendants' representation as set forth in Paragraph 54 of this
Complaint is false and misleading and constitutes a deceptive act or practice in violation of
Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count III**

57.     In numerous instances, in connection with the advertising, marketing, promotion,
offering for sale, or sale of mortgage loan modification or foreclosure rescue services,
Defendants have represented, directly or indirectly, expressly or by implication, that Defendants
will give full refunds to consumers if Defendants fail to obtain a loan modification for
consumers.

58.     In truth and in fact, in numerous instances in which Defendants have made the
representation set forth in Paragraph 57 of this Complaint, Defendants did not give full refunds
to consumers for whom Defendants failed to obtain loan modifications.

59.     Therefore, Defendants' representation as set forth in Paragraph 57 of this
Complaint is false and misleading and constitutes a deceptive act or practice in violation of
Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**THE TELEMARKETING SALES RULE**

60.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive
telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. § 6101 *et seq.,* in
1994. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it
in 2003, and amended certain sections thereafter.

61.     Defendants are "sellers" or "telemarketers" engaged in "telemarketing," as
defined by the TSR, 16 C.F.R. § 310.2(z), (bb), and (cc).

62.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by

Page 14 of  19

implication, in the sale of goods or services, any of the following material information:

    a.    Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii);

    b.    A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity. 16 C.F.R. § 310.3(a)(2)(vii); or

    c.    Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(iv).

63.    In addition, the 2003 amendments to the TSR established the National Do Not Call Registry of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

64.    Since October 17, 2003, sellers and telemarketers have been prohibited from calling telephone numbers on the Registry. 16 C.F.R.§ 310.4(b)(l)(iii)(B).

65.    Since October 17, 2003, sellers and telemarketers have been generally prohibited from calling any telephone number within a given area code unless the seller first has paid the annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry. 16 C.F.R.§ 310.8(a) and (b).

66.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a).

67.     The TSR exempts from coverage telephone calls initiated by a customer in response to a direct mail solicitation, unless the solicitation fails to clearly, conspicuously, and truthfully disclose all material information listed in Section 310.3(a)(1) of the TSR, including the total costs to purchase, receive, or use the good or service that is the subject of the sales offer. 16 C.F.R. § 310.6(b)(6). Defendants' solicitation letters do not make any mention of the total fees or total costs to purchase, receive, or use Defendants' mortgage assistance services.

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### Count IV

68.     In numerous instances, in connection with the telemarketing of mortgage loan modification or foreclosure rescue services, Defendants have misrepresented, directly or indirectly, expressly or by implication, that Defendants generally will obtain for consumers mortgage loan modifications that will make their mortgage payments substantially more affordable.

69.     Defendants' act or practice, as described in Paragraph 68 above, violates Section § 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

### Count V

70.     In numerous instances, in connection with the telemarketing of mortgage loan modification or foreclosure rescue services, Defendants have misrepresented, directly or indirectly, expressly or by implication, that Defendants are affiliated with, endorsed by, or sponsored by the consumer's mortgage lender or servicer.

71.     Defendants' act or practice, as described in Paragraph 70 above, violates Section § 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii).

## Count VI

72.     In numerous instances, in connection with the telemarketing of mortgage loan modification or foreclosure rescue services, Defendants have misrepresented, directly or indirectly, expressly or by implication, a material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies, including that Defendants will give full refunds if Defendants fail to obtain a loan modification for consumers.

73.     Defendants' act or practice, as described in Paragraph 72 above, violates Section § 310.3(a)(2)(iv) of the TSR, 16 C.F.R. § 310.3(a)(2)(iv).

## Count VII

74.     In numerous instances, in connection with the telemarketing of mortgage loan modification or foreclosure rescue services, Defendants have initiated or caused others to initiate, an outbound telephone call to a person's telephone number on the Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## Count VIII

75.     In numerous instances, in connection with the telemarketing of mortgage loan modification or foreclosure rescue services, Defendants have initiated, or caused others to initiate, an outbound telephone call to a telephone number within a given area code without Defendants, either directly or through another person, first paying the required annual fee for access to the telephone numbers within that area code that are included in the Registry, in violation of the TSR, 16 C.F.R. § 310.8.

## CONSUMER INJURY

76.     Consumers have suffered and will continue to suffer substantial injury as a result

of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

77.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

78.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, appointment of a receiver over the Corporate Defendants, immediate

access to records, and an order freezing assets;

     B.     Enter a permanent injunction to prevent future violations of the FTC Act and the

TSR by Defendants;

     C.     Award such relief as the Court finds necessary to redress injury to consumers

resulting from Defendants' violations of the FTC Act and the TSR, including but not limited to,

rescission or reformation of contracts, restitution, the refund of monies paid, and the

disgorgement of ill-gotten monies; and

     D.     Award Plaintiff the costs of bringing this action, as well as such other additional

relief as the Court may determine to be just and proper.

Dated: _____, 2011          Respectfully submitted,

                                WILLARD K. TOM
                                General Counsel

                                DANIEL KAUFMAN
                                Acting Regional Director

                                CINDY A. LIEBES
                                Assistant Regional Director

                                JESSICA D. GRAY, Trial Counsel
                                Special Florida Bar Number A5500840
                                BARBARA E. BOLTON, Attorney
                                Special Florida Bar Number A5500848
                                FEDERAL TRADE COMMISSION
                                Southeast Regional Office
                                225 Peachtree Street, N.E., Suite 1500
                                Atlanta, Georgia  30303
                                Office:  404-656-1350 (Gray)
                                Office:  404-656-1362 (Bolton)
                                Facsimile:  404-656-1379
                                Email: jgray@ftc.gov and bbolton@ftc.gov

                                Attorneys for Plaintiff
                                FEDERAL TRADE COMMISSION