UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-CV-80155-COHN

FEDERAL TRADE COMMISSION,

        Plaintiff,

vs.


U.S. MORTGAGE FUNDING, INC.,
a Florida corporation,

DEBT REMEDY PARTNERS, INC.,
a Florida corporation,

LOWER MY DEBTS.COM, LLC,
a Florida limited liability company,

DAVID MAHLER, individually and as an officer
of Debt Remedy Partners, Inc. and
a former officer of U.S. Mortgage Funding, Inc.

JOHN INCANDELA, JR., a.k.a. Jonathan
Incandela, Jr., individually and as a former director
of U.S. Mortgage Funding, Inc. and a manager of
Lower My Debts.Com, LLC, and

JAMEN LACHS, individually and as an officer of
U.S. Mortgage Funding, Inc.,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION
## FOR PRELIMINARY INJUNCTION AND ASSET FREEZE

**THIS CAUSE** is before the Court on Plaintiff Federal Trade Commission's Motion

for *Ex Parte* Temporary Restraining Order with Asset Freeze and Other Equitable Relief

and Order to Show Cause Why a Preliminary Injunction Should Not Issue [DE 7]

("Motion").[1]  The Court has reviewed the Motion, the memorandum of law and exhibits attached thereto [DE 8], and Defendant Debt Remedy Partners' and David Mahler's Opposition to and Motion to Dissolve, or Alternatively, to Modify *Ex Parte* Temporary Restraining Order [DE 28].  The Court also received evidence at a hearing on February 16, 2011, and February 23, 2011, and has reviewed the parties' briefs regarding the evidence [DE's 54, 56].

## I. BACKGROUND

According to Plaintiff Federal Trade Commission ("FTC"), since at least early 2009, Defendants U.S. Mortgage Funding, Inc. ("USMF"), Debt Remedy Partners, Inc. ("DRP"), Lower My Debts.Com, LLC ("LMD"), David Mahler, John Incandela, Jr., and Jamen Lachs have exploited consumers who are struggling to pay their mortgages, have fallen behind in their mortgage payments, or are facing foreclosure on their homes.  Defendants purportedly engage in a vast scheme of deception whereby they entice consumers to purchase their modification services by promising that, for an advance fee, they will obtain mortgage loan modifications that will lower substantially consumers' monthly mortgage payments.  To close the deal, Defendants allegedly guarantee consumers that their services are risk-free because 100% of the advance fee will be refunded if Defendants fail to obtain the loan modification.  Further, in many instances, Defendants appear to misrepresent that they are affiliated with consumers' lenders.  Consumers pay Defendants an advance fee in excess of $1000 and receive

---

[1]       Although Plaintiff styles its Motion as a Motion for an "Order to Show Cause Why a Preliminary Injunction Should Not Issue," the Court construes that portion of the Motion as a motion for a preliminary injunction.  Stated differently, Plaintiff may not shift its burden to the Defendant by artful labeling of the Motion.

virtually no services for their money.  In most cases, Defendants do not obtain the promised modifications or save their clients' homes from foreclosure.  In addition, Defendants routinely refuse to issue the guaranteed refunds.  The FTC asserts that the Defendants have operated as a common enterprise by marketing the same or related services, sharing office space and some employees, and commingling funds. Allegedly, Defendants have defrauded consumers out of more than $12 million.

According to the FTC, Defendants' practices violate, and if unrestrained are likely to continue violating, Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, as amended, by misrepresenting (1) a material aspect of the performance, efficacy, nature, or central characteristic of such services; (2) affiliation with, or endorsement or sponsorship by, any person or government entity; and (3) any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies.

To immediately halt Defendants' illegal activities, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Fed. R. Civ. P. 65(b), the FTC sought an *ex parte* temporary restraining order ("TRO").  The Court entered the TRO on February 9, 2011.  See DE 21.  The TRO (1) enjoins Defendants' allegedly illegal practices; (2) freezes Defendants' assets; (3) appoints a Temporary Receiver over the corporate Defendants; (4) grants the Temporary Receiver and Plaintiff immediate access to Defendants' business premises to preserve documents and other records related to Defendants' businesses; and (5) provides other necessary equitable relief. Such an order is necessary to stop continued harm to the public as well as to prevent

3

the dissipation of assets and destruction of records, thereby preserving the Court's ability to provide effective final relief.  In support thereof, the FTC submitted six volumes of evidence, including copies of Defendants' website and direct mail solicitations, declarations from victims and third parties, and a volume of previous orders in similar cases in this district wherein the FTC moved for and obtained *ex parte* TROs.

On February 16, 2011, and February 23, 2011, the Court received evidence from Plaintiff FTC, Defendant Debt Remedy Partners, Inc., and Defendant David Mahler to resolve Plaintiff's motion for a preliminary injunction.  Defendants U.S. Mortgage Funding, Inc., Lower My Debts.com LLC, John Incandela, Jr., and Jamen Lachs failed to appear at the hearing or otherwise respond to the TRO.  Plaintiff, however, concedes that it has not yet effectuated service on Jamen Lachs.

## II. LEGAL STANDARD

"Section 13(b) of the Federal Trade Commission Act authorizes the FTC to seek, and the district courts to grant, preliminary and permanent injunctions against practices that violate any of the laws enforced by the Commission."  FTC v. Gem Merch. Corp., 87 F.3d 466, 468 (11th Cir. 1996).  Section 13(b) provides, in relevant part, as follows:

Whenever the Commission has reason to believe-

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof . . . would be in the interest of the public-
the Commission . . . may bring suit in a district court of the United States to enjoin any such act or practice.  Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest . . . a temporary restraining order or a preliminary injunction may be granted without bond:

> . . . Provided, further, That in proper cases the Commission may seek,
> and after proper proof, the court may issue, a permanent injunction . . . .

15 U.S.C. 13(b).  Although section 13(b) does not expressly authorize courts to grant

monetary equitable relief, "the unqualified grant of statutory authority to issue an

injunction under section 13(b) carries with it the full range of equitable remedies,

including the power to grant consumer redress and compel disgorgement of profits."  Id.

"[I]n determining whether to grant a preliminary injunction under section 13(b), a

district court must (1) determine the likelihood that the FTC will ultimately succeed on

the merits and (2) balance the equities."  FTC v. Univ. Health, Inc., 938 F.2d 1206,

1217 (11th Cir. 1991).  The burden imposed on the FTC is lighter than the burden

imposed on private litigants by the traditional equity standard, and the FTC need not

show irreparable harm to obtain a preliminary injunction.  See id.  "To show a likelihood

of ultimate success, the FTC must 'raise [ ] questions going to the merits so serious,

substantial, difficult and doubtful as to make them fair ground for thorough investigation,

study, deliberation and determination by the FTC in the first instance and ultimately by

the [Court].'"  Id. at 1218 (quoting FTC v. Warner Commc'ns, Inc., 742 F.2d 1156, 1162

(9th Cir. 1984)).

### III. FINDINGS OF FACT

1.      David Mahler formed USMF in 2007.

2.      John Incandela, Jr. is the current principal and owner of USMF.

3.      USMF and LMD operated a loan modification and foreclosure relief business that
        operated out of 951 Broken Sound Parkway, Suite 200, Boca Raton, Florida.

4.      USMF conducted marketing and enrolled loan modification clients on behalf of
        Defendant LMD.

5.   USMF's direct mail solicitations, entitled "Eligibility Notice," led consumers to believe that they were pre-qualified for loan modifications.

6.   USMF led consumers to believe that USMF was affiliated with the consumers' lenders even though the Eligibility Notice stated in small print that USMF was not affiliated with the consumers' lenders.

7.   USMF charged consumers an up-front fee for their service.

8.   USMF guaranteed consumers that USMF would obtain a modification of the consumer's mortgage.

9.   USMF told consumers that it would refund the consumer's money if USMF failed to obtain a modification of the consumer's mortgage.

10.   USMF routinely failed to obtain a modification of the consumer's mortgage.

11.   USMF routine failed to issue a refund of the consumer's money.

12.   USMF used telephone numbers registered to and paid for by DRP.

13.   The numbers used by USMF are still in use by DRP today.

14.   Financial Links LLC conducted a loan modification business.

15.   David Mahler owns Blue Water LLC.

16.   David Mahler had authority to control Blue Water LLC.

17.   David Mahler controlled the day to day operations of Blue Water LLC.

18.   David Mahler registered the following domain name: www.myfinanciallinks.com.

19.   Blue Water LLC conducted marketing for Financial Links LLC out of 951 Broken Sound Parkway, Suite 200, Boca Raton, Florida.

20.   Blue Water LLC made representations to consumers regarding Financial Links' services to enroll those consumers in Financial Links' loan modification program.

21.   To attract potential clients, Blue Water LLC used the same "Eligibility Notice" as USMF.

22.   Blue Water LLC, as marketer for Financial Links, led consumers to believe that Financial Links was affiliated with the consumers' lenders even though the Eligibility Notice stated in small print that Financial Links was not affiliated with

6

the consumers' lenders.

23.    Financial Links charged consumers an up-front fee for their service.

24.    Blue Water LLC, as marketer for Financial Links, guaranteed consumers that Financial Links would obtain a modification of the consumer's mortgage.

25.    Blue Water LLC, as marketer for Financial Links, told consumers that Financial Links would refund the consumer's money if Financial Links failed to obtain a modification of the consumer's mortgage.

26.    Financial Links routinely failed to obtain a modification of the consumer's mortgage.

27.    Financial Links routinely failed to issue a refund of the consumer's money.

28.    Financial Links has called people on the Do Not Call list.

29.    David Mahler has the authority to control DRP.

30.    David Mahler exercises control over the day to day operations of DRP.

31.    DRP employees performed work for USMF.

32.    DRP and Blue Water LLC shared employees.

33.    DRP and Blue Water LLC are, functionally, a single company.

34.    If the Court had not entered a TRO, Blue Water LLC would perform marketing for another loan modification business, the Scholl Law Group.

35.    Blue Water LLC likely would have used the same marketing techniques to enroll clients for the Scholl Law Group that Blue Water LLC used to enroll clients for Financial Links.

36.    ProCorp Debt Solutions conducts an unsecured debt settlement business out of 951 Broken Sound Parkway, Suite 200, Boca Raton, Florida.

37.    David Mahler owns ProCorp.

38.    David Mahler owns Accurate Reliable Marketing.

39.    Accurate Reliable Marketing had $225,668.00 in its bank account when the Court entered the TRO.

40.     Accurate Reliable Marketing and David Mahler are alter egos of one another.

41.     Accurate Reliable Marketing conducts no business.

42.     Accurate Response Marketing LLC, an entity separate and distinct from Accurate Reliable Marketing, provides marketing services for insurance companies.

## IV. ANALYSIS

### A. Count I

In Count I, Plaintiff alleges that Defendants have violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)[2] by misrepresenting "directly or indirectly, expressly or by implication, that Defendants generally will obtain for consumers mortgage loan modifications that will make their mortgage payments substantially more affordable." Complaint ¶ 51.  To prove a violation of section 5(a) of the FTC Act, the FTC must establish three things: "(1) there was a representation; (2) the representation was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation was material." FTC v. Tashman, 318 F. 3d 1273, 1277 (11th Cir. 2003).

An individual defendant is liable for a corporate defendant's violations of section 5(a) of the FTC Act and the Telemarketing Sales Rule ("TSR") when (1) corporate violations are established, (2) the individual defendant has authority to control the

_____

[2]     Title 15 U.S.C. § 45(a) provides in relevant part as follows:

(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

(2) The Commission is hereby empowered and directed to prevent persons . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

corporate defendant or participates directly in the wrongful acts or practices, and (3) the individual defendant has some knowledge of the wrongful acts or practices. FTC v. Gem Merchandising Corp., 87 F.3d 466, 470 (11th Cir. 1996).  Section 5 does not require proof that the defendants intended to deceive or acted in bad faith.  FTC v. World Media Brokers, 415 F.3d 758, 764 (7th Cir. 2005).  Furthermore, the defendant need not have actual knowledge of the misrepresentation; reckless indifference to the truth or falsity of the representations or an awareness of a high probability of fraud coupled with an intentional avoidance of the truth will suffice.  Id.

Plaintiff provided adequate evidence to support its allegation in Count I insofar as it pertains to USMF, LMD, and Incandela.  Furthermore, USMF, LMD, and Incandela failed to appear at the evidentiary hearing or otherwise respond to the TRO.  The Court therefore finds that Plaintiff has demonstrated a likelihood of ultimate success against USMF, LMD, and Incandela.  Likewise, because Blue Water LLC is an alter ego of DRP, and Blue Water LLC misrepresented to consumers that Financial Links generally will obtain for consumers mortgage loan modifications that will make their mortgage payments substantially more affordable, the FTC has demonstrated a likelihood of success against DRP.  Furthermore, because David Mahler has the authority to control both DRP and Blue Water LLC and actually exercises control over the day to day operations of those entities, the FTC has demonstrated a likelihood of success against David Mahler on Count I.

## B. Count II

In Count II, Plaintiff alleges that Defendants have violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by misrepresenting "directly or indirectly, expressly or by

implication, that Defendants are affiliated with, referred, or approved by consumers' lenders." Complaint ¶ 54.  Plaintiff provided adequate evidence to support its allegation in Count II insofar as it pertains to USMF, LMD, and Incandela.  Furthermore, USMF, LMD, and Incandela failed to appear at the evidentiary hearing or otherwise respond to the TRO.  The Court therefore finds that Plaintiff has demonstrated a likelihood of ultimate success against USMF, LMD, and Incandela.  Likewise, because Blue Water LLC is an alter ego of DRP, and Blue Water LLC misrepresented that Financial Links is affiliated with, referred, or approved by consumers' lenders, the FTC has demonstrated a likelihood of success against DRP.  Furthermore, because David Mahler has the authority to control both DRP and Blue Water LLC and actually exercises control over the day to day operations of those entities, the FTC has demonstrated a likelihood of success against David Mahler on Count II.

## C. Count III

In Count III, Plaintiff alleges that Defendants have violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) by misrepresenting "directly or indirectly, expressly or by implication, that Defendants will give full refunds to consumers if Defendants fail to obtain a loan modification for consumers." Complaint ¶ 57.  Plaintiff provided adequate evidence to support its allegation in Count III insofar as it pertains to USMF, LMD, and Incandela.  Furthermore, USMF, LMD, and Incandela failed to appear at the evidentiary hearing or otherwise respond to the TRO.  The Court therefore finds that Plaintiff has demonstrated a likelihood of ultimate success against USMF, LMD, and Incandela. Likewise, because Blue Water LLC is an alter ego of DRP, and Blue Water LLC misrepresented that Financial Links will give full refunds to consumers if Defendants fail

to obtain a loan modification, the FTC has demonstrated a likelihood of success against DRP.  Furthermore, because David Mahler has the authority to control both DRP and Blue Water LLC and actually exercises control over the day to day operations of those entities, the FTC has demonstrated a likelihood of success against David Mahler on Count III.

### D. Count IV

In Count IV, Plaintiff alleges that Defendants have violated Section 310.3(a)(2)(iii) of the Telemarketing Sales Rule, 16 C.F.R. § 310.3(a)(2)(iii),[3] by misrepresenting that "Defendants generally will obtain for consumers mortgage loan modifications that will make their mortgage payments substantially more affordable." Complaint ¶ 68.  Plaintiff provided adequate evidence to support its allegation in Count IV insofar as it pertains to USMF, LMD, and Incandela.  Furthermore, USMF, LMD, and Incandela failed to appear at the evidentiary hearing or otherwise respond to the TRO. The Court therefore finds that Plaintiff has demonstrated a likelihood of ultimate success against USMF, LMD, and Incandela.  Likewise, because Blue Water LLC is an alter ego of DRP, and Blue Water LLC misrepresented to consumers that Financial

---

[3]     16 C.F.R. § 310.3(a)(2)(vii) provides as follows:

(a) Prohibited deceptive telemarketing acts or practices. It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:
. . .
(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:
. . .
(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer[.]

Links will obtain mortgage loan modifications, the FTC has demonstrated a likelihood of success against DRP.  Furthermore, because David Mahler has the authority to control both DRP and Blue Water LLC and actually exercises control over the day to day operations of those entities, the FTC has demonstrated a likelihood of success against David Mahler on Count IV.

## E. Remaining Counts

As demonstrated above, the FTC has shown that Blue Water LLC engages in activities that likely violate section 5(a) of the FTC Act.  Specifically, the FTC has shown that Blue Water LLC uses "Eligibility Notices" that are likely to confuse a reasonable consumer, that Blue Water LLC solicits an advance fee for Financial Link's loan modification services, and that Blue Water LLC guarantees a modification and a refund if its unsuccessful, but fails to follow through on either.  Furthermore, the FTC has shown that DRP and Blue Water LLC are likely alter egos of one another.  Indeed, the two entities share several employees and both are owned and operated by David Mahler.  Because DRP and Blue Water LLC are alter egos of one another, the FTC has demonstrated a likelihood of success on the merits against DRP.

Because the Court finds that Plaintiff FTC has shown a likelihood of ultimate success against Defendants USMF, LMD, DRP, John Incandela, Jr., and David Mahler on Counts I-IV, the Court need not determine whether Plaintiff FTC has shown a likelihood of ultimate success on the remaining counts.

## F. Asset Freeze

"Congress, when it gave the district court authority to grant a permanent

12

injunction . . . also gave the district court authority to grant any ancillary relief necessary to accomplish complete justice because it did not limit that traditional equitable power explicitly or by necessary and inescapable inference." FTC v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1434 (11th Cir. 1984).  To that end, a district court may enter an asset freeze as a proper use of the Court's equitable powers.  Id.; see also FTC v. Gem Merchandising Corp., 87 F.3d 466, 469 (11th Cir. 1996) ("[A] district court may order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible.").

Here, the Court finds that a limited asset freeze is necessary to prevent certain Defendants from continuing to engage in unlawful loan modification activity.  Likewise, in a case such as this where restitution to victims, disgorgement, or both may be outcomes of the litigation, a limited asset freeze is necessary to insure existing assets are not dissipated.  See Gem Merch., 87 F.3d at 469.

## V. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.     Plaintiff FTC's Motion for Preliminary Injunction [DE 7] is **GRANTED IN PART AND DENIED IN PART**.

2.     The Temporary Restraining Order [DE 20], Amended Temporary Restraining Order [DE 21], Order Granting Emergency Motion to Expand Receivership [DE 23], Order Granting in Part and Denying in Part Motion to Dissolve or Modify Temporary Restraining Order [DE 41], and Order [DE 43], (collectively, "Prior Orders") are **VACATED** upon entry of this Order Granting in Part and Denying in

Part Motion for Preliminary Injunction.

3.      Because Plaintiff FTC has not yet served Defendant Jamen Lachs, the Motion

for Preliminary Injunction is **DENIED** in all respects as to Jamen Lachs.

4.      Defendants United States Mortgage Funding, Lower My Debts.com, Inc., John

Incandela, Jr., Debt Remedy Partners, Inc., and David Mahler, as well as Blue

Water LLC which is an alter ego of Defendant DRP, and Accurate Reliable

Marketing which is an alter ego of Defendant David Mahler, are **RESTRAINED**

**AND ENJOINED** from conducting any loan modification business, including but

not limited to marketing, sales, promotion, enrollment, advertising or servicing

performed on behalf of itself or any other entity or individual engaged in loan

modification.[4]

---

[4]      For purposes of this order, "loan modification" includes the following: any good, service, plan, or program that is represented, expressly or by implication, to assist a consumer in any manner to (1) stop, prevent, or postpone any home mortgage or deed of trust foreclosure sale; (2) obtain or arrange any renegotiation, settlement, modification, or other alteration of any term of a mortgage, deed of trust, or home loan; (3) obtain any forbearance from any mortgage loan holder or servicer; (4) exercise any right of reinstatement of any mortgage loan; (5) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the owner of property sold at foreclosure may cure his or her default or reinstate his or her obligation; (6) obtain any waiver of an acceleration clause contained in any promissory note or contract secured by a deed of trust or mortgage on a residence in foreclosure or contained in that deed of trust; (7) obtain a loan or advance of funds that is connected to the consumer's home ownership; (8) avoid or ameliorate the impairment of the consumer's credit record, credit history, or credit rating that is connected to the consumer's home ownership; (9) save the consumer's residence from foreclosure; (10) assist the consumer in obtaining proceeds from the foreclosure sale of the consumer's residence; (11) obtain or arrange a pre-foreclosure sale, short sale, or deed-in-lieu of foreclosure; (12) obtain or arrange a refinancing, recapitalization, or reinstatement of a mortgage, deed of trust, or home loan; (13) audit or examine any term of a consumer's mortgage, deed of trust, or home loan application; or (14) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the renter of property sold at foreclosure may continue to occupy the property.  The foregoing shall include any manner of claimed assistance,

5.      Defendants USMF, LMD, DRP, as well as Blue Water LLC, along with their

successors, assigns, members, officers, agents, servants, employees, and

attorneys, and those persons or entities in active concert or participation with any

of them who receive actual notice of this Order by personal service or otherwise,

whether acting directly or through any entity, corporation, subsidiary, division,

affiliate, or other device, in connection with the telemarketing, advertising,

marketing, promotion, offering for sale or sale of any good or service, are hereby

**RESTRAINED AND ENJOINED** from violating, or assisting others in violating,

any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, including, but

not limited to:

a.      Section 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), by

misrepresenting, directly or by implication, any material aspect of the

performance, efficacy, nature, or central characteristic of any good or

service;

b.      Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii), by

misrepresenting, directly or by implication, affiliation with, or endorsement

by, any government or third-party organization;

c.      Section 310.3(a)(2)(iv) of the TSR, 16 C.F.R. § 310.3(a)(2)(iv), by

misrepresenting, directly or by implication, any material aspect of the

nature or terms of the seller's refund, cancellation, exchange, or

---

including, but not limited to, debt, credit, budget, or financial counseling; receiving
money for the purpose of distributing it to creditors; contacting creditors or servicers on
behalf of the consumer; and giving advice of any kind with respect to filing for
bankruptcy.

repurchase policies;

d.      Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), by initiating or causing others to initiate outbound telephone calls to a person's telephone number on the National Do Not Call Registry; and

e.      Section 310.8 of the TSR, 16 C.F.R. § 310.8, by initiating or causing others to initiate an outbound telephone call to a telephone number within a given area code without Defendants, either directly or through another person, first paying the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry.

6.     Any person hosting any Internet website for, or on behalf of, Defendant USMF, LMD, or Blue Water LLC, including usmortgagefunding.org and myfinanciallinks.com, who receives actual notice of this Order by personal service or otherwise, shall immediately do whatever is necessary to prevent the destruction or erasure of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief by preserving such website in the format in which it is currently maintained.

7.     Defendants John Incandela, Jr. and David Mahler are **ENJOINED AND RESTRAINED** from obtaining a secured loan or otherwise incurring encumbrances on their real property, personal property, or other assets.

8.     Michael Goldberg of Akerman Senterfitt & Eidson, PA is the Court-appointed

Receiver in this case and has the full power of an equity Receiver.  The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order.  The Receiver shall be accountable directly to this Court.  The Receiver shall comply with all local rules and laws governing federal equity receivers.

9.      Pending further order of the Court, Defendants David Mahler, John Incandela, Jr., U.S. Mortgage Funding, Inc., Lower My Debts.com LLC, Debt Remedy Partners, Inc., as well as non-parties Blue Water LLC and Accurate Reliable Marketing LLC, their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, who receive notice of this order by personal service, mail, facsimile transmission or otherwise are restrained from, directly or indirectly, transferring, setting-off, changing, selling, pledging, assigning, liquidating or otherwise disposing of, or withdrawing any assets from the accounts listed in Schedule "A," attached hereto.

10.     The asset freeze shall not apply to the Court-appointed Receiver.

11.     Any bank account not listed in Schedule "A" is no longer subject to the asset freeze contemplated in the Court's Prior Orders.

12.     Defendant David Mahler shall submit to the Receiver an itemized monthly budget that sets forth Mr. Mahler's reasonable monthly expenses for himself, his wife, and their children, including but not limited to the following: housing payments, utilities, transportation, tuition, groceries, and medical costs ("Family Budget"). To the extent possible, Mr. Mahler shall provide supporting documentation that

sets forth such monthly expenses (e.g., tuition bills, car payment invoices, cancelled checks for mortgage payments, etc.).  The Family Budget should not include amounts for vacation, entertainment, or other non-essential items.

13.   The Receiver shall promptly review the proposed Family Budget and supporting documentation.  The Receiver shall approve the Family Budget as proposed or reduce the Family Budget in his discretion.  Thereafter, as soon as practicable, the Receiver shall make an initial disbursement to Mr. Mahler from David Mahler's bank account ending in 5753, Accurate Reliable Marketing's bank account ending in 7239, or both, in accordance with the Receiver-approved Family Budget for March, 2011.  The Receiver shall make additional disbursements on the first of each month until otherwise ordered by the Court or available funds are exhausted, whichever occurs first.  The Receiver may, in his sole discretion, modify the Family Budget as necessary to account for essential, yet unanticipated, expenses.

14.   Defendant Debt Remedy Partners may continue its debt settlement business provided DRP, as well as any other entities owned in whole or in part by David Mahler, including but not limited to ProCorp Debt Solutions and Accurate Response Marketing LLC, have no involvement with loan modification activities. Notwithstanding, Defendants Debt Remedy Partners and David Mahler may incur debt only in the ordinary course of business and must seek approval from the Receiver to make any withdrawals, transfers, or disbursements from any of the bank accounts listed on Schedule "A" attached hereto.  Accordingly, Defendants Debt Remedy Partners and David Mahler shall make available to the

Receiver any information the Receiver reasonably requests to insure the parties have complied with the terms of this Order.

15.    Pending further order of the Court, Defendants U.S. Mortgage Funding, Lower My Debts.com LLC, Debt Remedy Partners LLC, as well as Blue Water LLC and Accurate Reliable Marketing, as well as their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, except the Receiver that has been appointed by this Court, are restrained and enjoined from directly or indirectly destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, any of the books, records, documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to Defendants U.S. Mortgage Funding, Lower My Debts.com LLC, Debt Remedy Partners LLC, as well as Blue Water LLC and Accurate Reliable Marketing, wherever located.

16.    The Receiver shall file with the Court, between the 14th and 21st of each month, a motion for fees incurred in his role as Receiver.  The Receiver shall make all reasonable efforts to keep his fees as low as practicable under the circumstances.

17.    A **STATUS CONFERENCE** is set for 9:00 a.m. on June 3, 2011, to determine the parties' and non-parties' compliance with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 1st day of March, 2011.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

**Schedule "A"**

Accurate Reliable Marketing, LLC
Chase/ account ending 7239

Mahler Personal Account
Wells/ account ending 0350

Mahler Personal Account
Chase/ account ending 5753

Incandela Personal Account
account ending 7834

US Mortgage Funding
account ending 8062
account ending 9852

Debt Remedy Partners
Florida Shores/
account ending 3722
account ending 3720

Blue Water, LLC
Chase/
account ending 1523
account ending 6900
account ending 7429